IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
COOKEVILLE DIVISION

| | |
|---|---|
| RICHARD L. BRATTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 2:06-0075 |
| v. ) | Judge Nixon |
| ) | Magistrate Judge Griffin |
| MICHAEL J. ASTRUE, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Pending before the Court is Plaintiff Richard Bratton's ("Plaintiff") Motion for Judgment on the Record ("Plaintiff's Motion") (Doc. No. 13), Plaintiff's Memorandum in Support (Doc. No. 14), Defendant's Response (Doc. No. 17), and Plaintiff's Reply to the Response (Doc. No. 18). Magistrate Judge Griffin has issued a Report and Recommendation ("Report") (Doc. No. 19), recommending that the Court deny Plaintiff's Motion and affirm the decision of the Social Security Administration. Subsequently, Plaintiff filed timely objections to the Report. (Doc. No. 20.) Upon review of the Magistrate Judge's Report and for the reasons discussed herein, the Court **ADOPTS** the Report in its entirety and **DENIES** Plaintiff's Motion.

1

**I.     BACKGROUND**

*A.     Procedural Background*

Plaintiff filed the current application for Disability Insurance Benefits and Social Security Income on October 4, 2000.  (Tr. 69, 1065.)  Plaintiff alleged disability beginning September 4, 2000 due to bipolar disorder, social anxiety disorder, and physical injuries sustained in an automobile accident.  (Tr. 97.)  The Social Security Administration ("SSA") initially denied Plaintiff's claims on May 9, 2001.  (Tr. 41-45.)  Plaintiff requested reconsideration on May 30, 2001 (Tr. 46), and the SSA again denied the claims on September 28, 2001 (Tr. 48).  An Administrative Law Judge ("ALJ") held a hearing on January 14, 2004, receiving testimony from Plaintiff and an impartial vocational expert ("VE").  (Tr. 1152-1206.)  The ALJ issued a decision denying Plaintiff's claim for benefits on August 10, 2004.  (Tr. 25-33.)  The Appeals Council denied Plaintiff's request for review on July 27, 2006 (Tr. 9-12), making the ALJ's decision the final decision of the SSA.

Plaintiff then filed this civil action on September 22, 2006 to obtain judicial review of the ALJ's decision, seeking an award of benefits or remand.  (Doc. No. 1.)  The Court has jurisdiction under 42 U.S.C. § 405(g) (2010).  On January 26, 2010, Magistrate Judge Griffin issued a Report recommending that Plaintiff's Motion be denied and that the decision of the SSA be affirmed.  (Doc. No. 19.)  On February 12, 2010, Plaintiff filed objections, asserting that Magistrate Judge Griffin: (1) made an error of law in recommending that the Court excuse the ALJ's failure to comply with Social Security Ruling 00-4p as harmless error; (2) erred in finding that substantial evidence supports the ALJ's reliance on bench assembler jobs at step five; (3) erred in finding that a "severe" impairment may have no impact on the ability to work; and (4)

erred in recommending that the Court affirm the ALJ's rejection of the opinions of Dr. Barr, Plaintiff's treating psychiatrist. (Doc. No. 20.)[1]

    B.    *Factual Background*

The Court adopts the portion of the Magistrate's Report addressing the relevant facts of the record. (Doc. No. 19, at 2-23.)

## II. STANDARD OF REVIEW

The Court reviews de novo the portions of the Report to which Petitioner objects pursuant to 28 U.S.C. § 636(b) (2010). The Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (2010). Thus, the Court's review is limited to determining whether substantial evidence in the record supports the Commissioner's decision and to finding legal errors. Landsaw v. Sec'y of Health & Hum. Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quoting Cutlip v. Sec'y of Health & Hum. Servs., 25 F.3d 284, 286 (6th Cir. 1994)).

The Court must uphold the Commissioner's decision if substantial evidence supports it, even if the evidence could also support the opposite conclusion. Her v. Comm'r of Soc. Sec.,

---

[1] The ALJ's decision contains alternate holdings at step four and step five of the disability determination, both concluding that Plaintiff is not disabled. (Tr. 32.) Plaintiff originally asserted error with the ALJ's step four determination that Plaintiff could perform his past relevant work as an office manager. (Doc. No. 14 at 13-16.) Defendant conceded that the ALJ misidentified the past relevant work and does not defend the step four determination. (Doc. No. 17 at 8). As a result, the Court will focus only on the objections pertaining to the ALJ's step five determinations.

3

203 F.3d 388, 389 (6th Cir. 1999). Factual determinations should be left to the ALJ and the Commissioner; thus, the Court must affirm the Commissioner's findings if they are supported by substantial evidence, even if the Court would have come to a different conclusion. Hogg v. Sullivan, 987 F.2d 328, 331 (6th Cir. 1993).

### III.   PLAINTIFF'S OBJECTIONS TO THE REPORT

   A.   *Plaintiff objects to the Magistrate Judge's recommendation that the Court excuse the ALJ's failure to comply with Social Security Ruling 00-4p as harmless error.*

S.S.R. 00-4p addresses the role of VE testimony in making disability determinations. An adjudicator may not rely on VE evidence if it is "based on underlying assumptions or definitions that are inconsistent with . . . regulatory policies or definitions." S.S.R. 00-4p specifically addresses exertional levels as follows:

> Although there may be a reason for classifying the exertional demands of an occupation (as generally performed) differently than the DOT . . . the regulatory definitions of exertional levels are controlling. For example, if all available evidence (including VE testimony) establishes that the exertional demands of an occupation meet the regulatory definition of "medium" work . . . the adjudicator may not rely on VE testimony that the occupation is "light" work.

S.S.R. 00-4p. The Ruling further provides that "[w]hen a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the *DOT*." Id. If there appears to be a conflict, the adjudicator should "obtain a reasonable explanation," resolve the conflict before relying on the VE evidence, and explain how the conflict was resolved in the decision. Id.

4

Failure to comply with the requirements of S.S.R. 00-4p can amount to either reversible or harmless error. If there is in fact a conflict between the VE testimony and the *DOT*, the ALJ's error is grounds for remand. Lancaster v. Comm'r of Soc. Sec., 228 Fed. Appx. 563, 575 (6th Cir. 2007). If there is no conflict, courts are divided as to whether a mere failure to inquire about potential inconsistencies is grounds for remand or harmless error. Id. at 574; see also Wix v. Astrue, No. 3:08-1222, 2010 WL 520565, at *7 (M.D. Tenn. Feb. 9, 2010) (acknowledging the split in case law and the Sixth Circuit's failure to resolve the issue). Thus, disposition of this issue rests on a three-step inquiry: (1) whether the ALJ asked the VE about the *DOT*; (2) if the ALJ did not, whether there was an actual conflict between the VE's testimony and the *DOT*; and (3) if there was not conflict, whether failure to ask the VE about the *DOT* is harmless error.

Plaintiff's Motion asserts that the ALJ violated Social Security Ruling 00-4p by failing to explicitly ask the VE if her testimony regarding suitable jobs for Plaintiff conflicted with the *Dictionary of Occupational Titles* ("*DOT*"). S.S.R. 00-4p (Dec. 4, 2000). Plaintiff argued that this error alone requires remand for rehearing. Plaintiff further asserts that the VE's testimony conflicted with the *DOT* because she identified light jobs, which involve standing or walking for four hours out of an eight-hour workday. Plaintiff argued that the *DOT* requires standing or walking for six hours in order to constitute light work, and thus the VE's testimony was necessarily inconsistent. Plaintiff alleged that the ALJ further violated S.S.R. 00-4p by failing to obtain a "reasonable" explanation for the conflict.

During the administrative hearing, the ALJ failed to ask the VE about inconsistencies between her testimony and the *DOT*. (Tr. 1200-1204.) Defendant concedes that the ALJ case did not fulfill the "affirmative responsibility" to inquire under S.S.R. 00-4p. (Doc. No. 17, at 6.)

5

In the Report, Magistrate Judge Griffin recommended a finding that the ALJ's failure to inquire about the *DOT* constitutes harmless error because there was no actual conflict between the VE's testimony and the *DOT*. The Magistrate reasoned that the language of S.S.R. 00-4p indicates that the *DOT* lists only the *maximum* exertional requirements so that any lesser requirement is compatible. In addition to objecting to the ALJ's oversight, Plaintiff's objection further argues that the Magistrate Judge's finding is irreconcilable with agency policy. Plaintiff rebuts the theory that the *DOT* gives only the maximum walking or standing requirements for each category of work. Plaintiff points to a VE training manual as support. (Doc. No. 20, Ex. A.) Plaintiff claims that according to the manual, a "sit/stand option" that is less demanding than sedentary work is not consistent with the *DOT*. Plaintiff finds this to be evidence that physical demands that are less than the "maximum" listed in the *DOT* are not necessarily compatible. Generally, Plaintiff asserts that the theory is illogical, would render S.S.R. 00-4p pointless, and would supplant the overall agency policy in favor of consistency between VE testimony and the *DOT*.

As a preliminary matter, the Court concludes that the VE's testimony does not conflict with the *DOT*. At the hearing, the ALJ posed a hypothetical to the VE involving a person who could stand or walk for up to four hours in an eight-hour workday. (Tr. 1200.) The VE identified several jobs in the light exertional category that she believed Plaintiff could perform with this limitation. (Tr. 1201-03.) Neither the *DOT* nor the regulations state a specific number of hours that an employee must be able to stand or walk in order to qualify for light work. 20 C.F.R. § 404.1567 (2010). Both use general terms such as "a good deal of walking" and walking "to a significant degree." Id. S.S.R. 83-10 suggests that this value is six out of eight hours but

6

uses the term "approximately," indicating that six hours is not meant to be an exact requirement, and refers to this as the "full range" of light work. S.S.R. 83-10 (1983).

Additionally, S.S.R. 00-4p explains that "[t]he *DOT* lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE, VS [vocational specialist], or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the *DOT*." S.S.R. 00-4p. Accordingly, the ALJ did not err in relying on the VE's finding that Plaintiff could perform light work with a four-hour walking limitation. The Court does not discount Plaintiff's argument that this perspective may trivialize S.S.R. 00-4p to some degree. Nevertheless, the Court must defer to the plain language of the Ruling itself, which clearly refers to the exertional requirements as maximum values. Id. Plaintiff's citation to the VE training manual is inapposite, as a training manual does not supplant an SSA Ruling. Accordingly, the Court holds that there is no conflict between the VE's testimony regarding jobs at the light level of work and the *DOT*.

Where there is no actual conflict between a VE's testimony and the *DOT*, courts within both the Sixth Circuit and this district tend to hold that the technical error of failing to inquire does not constitute reversible error. See Wix, 2010 WL 520565, at *7 ("This court likewise holds that where, as here, the ALJ technically erred in failing to inquire about conflicts under SSR 00-4p . . . such an oversight does not amount to reversible error."); Fleeks v. Comm'r of Soc. Sec., No. 8-CV-13135, 2009 WL 2143768, at *7 (E.D. Mich. July 13, 2009) ("The present facts support a finding that the ALJ's failure to make the required inquiry . . . amounts to harmless error."). This Court's previous holdings are in keeping with this trend. See, e.g.,

7

McEwen v. Astrue, No 3:06-0319, 2009 WL 5196061, at *4 (M.D. Tenn. Dec. 21, 2009) ("The ALJ's failure to inquire about inconsistencies does not, without more, constitute reversible error."). The Court recognizes Plaintiff's argument that SSA policy favors consistency between VE testimony and the *DOT*. However, the Court is reluctant to reject the judgment of other competent courts on this issue or to overturn its own precedent. Consequently, because there was no conflict between the VE's testimony and the *DOT* in this case, the ALJ's failure to inquire constitutes harmless error.

> B. *Plaintiff objects to the Magistrate Judge's finding that substantial evidence supports the ALJ's reliance on bench assembler jobs at step five.*

> 1. Reliance on the VE's Inaudible Testimony

During the hearing, the ALJ posed a detailed hypothetical to the VE with his assessment of Plaintiff's abilities and limitations. (Tr. 1200-01.) There are no inaudible portions of the hypothetical. (Id.) Later, the ALJ revised the hypothetical to include Plaintiff's recent vocational training. (Tr. 1203-04.) The relevant portion of the transcript provides:

> ALJ: Would there be light jobs available with that training that fits into the four-hour standing and walking and other limitations I provided? In other words, would there be transferable work?
> VE: Yeah, I'm trying to think. There are bench work type of electronics technicians [INAUDIBLE] that they don't actually have to lift the computer, but they just work on parts of the computer and sit on a bench. And there are some light jobs [INAUDIBLE] the DOT [INAUDIBLE].

(Id.) Plaintiff argues that the transcript of the hearing is defective in violation of his right to know the VE's answer with respect to the bench assembler position. Plaintiff asserts that the *DOT* is relevant as a matter of law under S.S.R. 00-4p, so that he has a right to know whether the

8

VE identified a specific *DOT* bench job utilizing his transferable computer skills, i.e., a skilled or semiskilled position. Plaintiff claims that because part of the VE's answer to the ALJ's hypothetical question was inaudible, he cannot exercise his statutory right to challenge the ALJ's reliance on the answer. Plaintiff contends that the transcript also violates the Commissioner's duty to file a "certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based." 42 U.S.C. § 405(g) (2010). As a result, Plaintiff argues that the Magistrate Judge was incorrect in finding that there was no error because the VE properly considered Plaintiff's limitations when asserting that he could work as a bench assembler. (Doc. No. 19, at 40.)

Plaintiff does not provide law supporting a finding that some inaudible words in a hearing transcript violates § 405(g), nor is the Court aware of any. The Court agrees with the Magistrate Judge's finding that enough of the conversation between the ALJ and the VE exists to show that the VE properly considered Plaintiff's limitations and to support the ALJ's reliance on the bench assembler job. (Doc. No. 19 at 40.) Additionally, the portion of the VE's testimony with which Plaintiff takes issue is only relevant to the single job of bench assembler (Doc. No. 20, at 7-8), and the ALJ also relied on the VE's opinion that Plaintiff could perform at least four other light jobs (Tr. at 32). "When an expert testifies that a claimant can perform multiple jobs and at least one of those jobs does not conflict with the DOT and exists in significant numbers in the national economy, a decision by the SSA based on the expert's testimony is supported by substantial evidence." Brown v. Barnhart, 408 F. Supp. 2d 28, 36 (D.D.C. 2006).

### 2. Consideration of Plaintiff's Recent Vocational Training

Plaintiff further objects to the ALJ's reliance on his recent vocational training in the portion of the hearing quoted supra Part III.B.1. At step five of the disability determination, the Commissioner bears the burden of proving that the claimant has the residual functional capacity to perform substantial gainful activity. Allison v. Apfel, No. 99-4090, 2000 WL 1276950, at *3 (6th Cir. Aug. 30, 2000); Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). When the claimant suffers only from exertional limitations, the Commissioner can satisfy this burden by referencing the Medical-Vocational Guidelines ("the grid"); however, it is not appropriate to apply the grid in the presence of significant non-exertional limitations. Allison, 2000 WL 1276950, at *3; see also Abbott, 905 F.2d at 926-27 (application of the grid was erroneous when a claimant was exertionally limited to sedentary work and non-exertionally limited by a low I.Q.); Shelman v. Heckler, 821 F.2d 316, 322 (6th Cir. 1987) (the claimant's inability to work in the presence of environmental pollutants precluded reliance on the grid). If an ALJ is precluded from relying on the grid alone, he may use it as a "framework," while considering the claimant's exertional and non-exertional limitations. The ALJ "may rely on the assistance of a vocational expert to make his [RFC] determination." Allison, 2000 WL 12376950, at *3 (citing Damron v. Sec'y of Health & Human Servs., 778 F.2d 279, 282 (6th Cir. 1985)).

Plaintiff argues that the ALJ may have improperly ruled that Plaintiff could perform a semi-skilled bench assembler job based on his recently obtained education. It is unclear from the hearing transcript what skill level the bench assembler positions require. Plaintiff asserts that under the grid, education may be used only for direct entry into skilled work.[2] 20 C.F.R. Pt. 404,

---

[2] The Court adopts the following footnote from the Magistrate's Report: "The plaintiff originally argued that 20 C.F.R. § 404.1568(d)(4) also applied to whether the plaintiff's vocational training as an electronics

10

Subpt. P, App. 2. Thus, Plaintiff contends that the VE may have violated the regulations by identifying semi-skilled jobs based on Plaintiff's education. As a result, Plaintiff insists that the ALJ erred in relying on the VE's testimony that he could perform bench assembler jobs, and the Magistrate Judge erred in recommending that the Court affirm the ALJ's findings.

Previously, at step two, the ALJ determined that Plaintiff suffers from significant non-exertional limitations. Thus, he was not able to rely exclusively on the grid, and he did not err in relying on the VE's well-informed opinion. It is therefore irrelevant if the VE identified skilled or semi-skilled bench assembler positions. Alternatively, the same reasoning that applied to the inaudible testimony in Section III.B.1., supra, is pertinent here. Even if the Court were to find that the VE's testimony regarding the bench assembler position was invalid, the ALJ's determination is supported by substantial evidence because he relied on several other jobs that are widely available in the national economy. Brown, 408 F. Supp. 2d at 36.

> C. *Plaintiff objects to the Magistrate Judge's finding that a "severe" impairment may have no impact on the ability to work.*

Plaintiff contends that the ALJ's step two determination that Plaintiff had "severe" mental impairment precluded reliance on semi-skilled and skilled jobs in step five and objects to the Magistrate Judge's finding to the contrary. A severe impairment "significantly limits an individual's physical or mental abilities to do basic work activities." S.S.R. 96-3p (July 2, 1996); see also 20 C.F.R. § 404.1521. Basic work activities include "understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-

---

technician could be considered a transferrable skill. Docket Entry No. 14, at 16-17. However, as the Commissioner pointed out, 20 C.F.R. § 404.1568(d)(4) applies to individuals who are of advanced age, or age 55 or older, and thus

11

workers and usual work situations; and dealing with changes in a routine work setting." 20 C.F.R. § 404.1521. Plaintiff reasons that these limitations coincide with a diminished ability to perform unskilled work, 20 C.F.R. § 404.1568(a), and therefore entirely preclude performance of semi-skilled or skilled jobs. Thus, according to Plaintiff, the ALJ's reliance on two jobs that are not unskilled—file clerk and bench assembler—was incorrect, and the Magistrate Judge's finding that a severe impairment may not affect the ability to work was an error of law.

Defendant cites S.S.R. 85-15 (1985) in support of the Magistrate's finding that a severe impairment does not necessarily preclude work. The Ruling states that "[j]obs which can possibly be performed by persons with solely nonexertional impairments . . . will include occupations above the unskilled level if a person has skills transferable to skilled and semiskilled occupations within his or her RFC." S.S.R. 85-15. The Ruling continues that "[m]ental impairments may or may not prevent the performance of a person's past jobs. They may or may not prevent an individual from transferring work skills." Id. The Court finds the Ruling persuasive to the extent that the SSA contemplates flexibility in determining a claimant's RFC. The Court thus employs the substantial-evidence standard to evaluate the ALJ's determination that Plaintiff's RFC allows him to perform skilled work.

Again, it is appropriate to examine this objection in light of the total number of jobs on which the ALJ relied in determining that Plaintiff can perform substantial gainful activity. The ALJ relied on the VE's identification of five positions totaling 7,044 jobs in Tennessee and 363,000 jobs nationwide.[3] (Tr. 32.) The VE properly considered Plaintiff's limitations prior to

---

is not applicable to the plaintiff since he was 52 years old at the time of the ALJ's decision." (Doc. No. 19, at 39).
   [3] The ALJ's decision misstated the VE's testimony regarding the number of production inspector jobs

12

identifying these positions. (Tr. 1200-1204.) Even if the disputed skilled jobs are eliminated, there are left three positions totaling 3,800 jobs in Tennessee and 181,000 jobs nationwide. Plaintiff does not assert error with any of these jobs. The Court finds that the remaining jobs amount to a significant number and constitute substantial evidence supporting the ALJ's determination. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003) (holding that two available jobs with 3,900 positions in the state economy supported a finding of not disabled); Brown, 408 F. Supp. 2d at 36 (finding substantial evidence when at least one job identified by a VE exists in significant numbers).

> D. *Plaintiff objects to the Magistrate Judge's recommendation to affirm the ALJ's rejection of the opinions of Dr. Barr, Plaintiff's treating psychiatrist.*

Plaintiff argues that the Magistrate Judge relied on improper post hoc rationalizations in order to recommend that the Court affirm the ALJ's rejection of Dr. Barr's medical opinions. Specifically, Plaintiff claims that the Magistrate Judge relied on reasons that the ALJ never stated as justification. Plaintiff further argues that the Magistrate Judge erroneously recommended affirming the ALJ's reliance on Dr. Barr's Global Assessment of Functioning ("GAF") ratings. Plaintiff contends that comments to the SSA's revised mental-impairment regulations, 65 Fed. Reg. 50,745, 50,764-765 (Aug. 21, 2000), reject GAF ratings as controlling the outcome of disability determinations. Finally, Plaintiff argues that the Magistrate Judge incorrectly endorsed the ALJ's reliance on Plaintiff's vocational training to reject Dr. Barr's assessment. Plaintiff claims that vocational training is not a legally sufficient ground for

---

available in the national economy. (Tr. 32.) Plaintiff concedes that the Magistrate was correct in finding that this error alone does not constitute reversible error. (Doc. No. 20, at 10.)

rejecting a treating physician's findings, and that it contradicts reports from Plaintiff's vocational instructor that Plaintiff had limited concentration, memory, and ability to respond appropriately to other students.

The parties do not dispute that Dr. Barr is a treating physician. Under the treating physician rule, an ALJ must give controlling weight to a treating physician's opinion, as long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2) (2010). Even when the physician's opinion is non-controlling, there remains a rebuttable presumption that the opinion is entitled to great deference. S.S.R. 96-2p (July 2, 1996). An ALJ must give "good reasons" for discounting or rejecting a treating physician's opinion. 20 C.F.R. § 404.1527(d)(2). "Good reasons" are those that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." S.S.R. 96-2p.

Plaintiff does not specify which of the Magistrate Judge's justifications he believes are post hoc. After reviewing the Report and the ALJ's decision, the Court agrees that the ALJ did not specifically refer to the contradiction between Dr. Barr's findings and those of other physicians. All of the other grounds for discounting Dr. Barr's opinion that were cited by the Magistrate Judge, however, are included in the ALJ's decision and constitute "good reasons." The ALJ discussed Plaintiff's admission that his attorneys and physicians encouraged him to maintain his "negative behaviors" in order to help his disability case. This raises suspicion that

14

Dr. Barr may have been one of the physicians encouraging this behavior or, alternatively, may have had a false impression of Plaintiff's symptoms because Plaintiff had exaggerated them.

The ALJ further found that Dr. Barr's assessment was inconsistent with the GAF scores that he assigned Plaintiff. The Magistrate's Report endorses this finding. Plaintiff objects that GAF scores "do not control the outcome of a disability determination." (Doc. No. 20 at 14.) The GAF scores that Dr. Barr assigned increase steadily from 55 to 64 from December 2000 to April 2002, and then drop back to 55 in October 2003. (Tr. 27-29.) A GAF score can be helpful in assessing an individual's mental RFC. Kornecky v. Comm'r of Soc. Sec., 167 Fed. Appx. 496, 503 n.7 (6th Cir. 2006). At the same time, the Sixth Circuit recognizes that a GAF score is a physician's subjective evaluation and not raw medical data. Kennedy v. Astrue, 247 Fed. Appx. 761, 766 (6th Cir. 2007). The Commissioner explicitly denies endorsing use of the GAF scale in Social Security disability programs, and states that "[i]t does not have a direct correlation to the severity requirements in our mental disorders listings." 65 Fed. Reg. 50,745, 50,764-765 (Aug. 21, 2000); see also Kennedy, 247 Fed. Appx. at 766; DeBoard v. Comm'r Soc. Sec., 211 Fed. Appx. 411 (6th Cir. 2006). In Kennedy, the Sixth Circuit rejected an ALJ's finding of an "improvement in mental functioning" based on improved GAF scores when there was not other substantial evidence in the record to support the finding. Kennedy, 247 Fed. Appx. at 766.

Plaintiff's objection, however, is not that the ALJ improperly used the GAF scores in assessing his mental functioning, or even that the ALJ erred in finding them inconsistent with Dr. Barr's Medical Source Statement. Plaintiff only objects to the ALJ's "heavy reliance" on the GAF scores to evaluate the consistency and credibility of Dr. Barr's opinion and to determine

15

what weight it should be given. This is no indication that using Plaintiff's GAF scores in this way is inappropriate or different than an ALJ's normal assessment of consistency within a physician's treatment records. Additionally, it is unfair to say that the ALJ relied heavily on the GAF scores in discounting Dr. Barr's opinion. Rather, this was only one of several reasons that the ALJ asserted in his decision. (Tr. 32.)

Finally, the ALJ noted that Plaintiff was able to obtain a diploma in computer and network service since he started seeing Dr. Barr. He referenced Plaintiff's A- grade average and presumably considered his excellent rating for attendance at the school. This contradicts Dr. Barr's extremely negative report on Plaintiff's mental capabilities and ability to maintain attendance. Plaintiff's only basis for his argument that his vocational training is a legally insufficient ground for discounting Dr. Barr's opinion is that it is inconsistent with a letter from his instructor, William Callahan. The ALJ explicitly addresses the letter and gives sufficient reasons for discounting it, namely that the letter is undated and does not specify in how many courses Mr. Callahan instructed Plaintiff. In fact, the letter only refers to a singular "computer class," and states that Plaintiff made "acceptable progress" despite his asserted limitations. (Tr. at 152.) The Court does not find that Mr. Callahan's letter warrants disturbing the findings of the ALJ. Accordingly, the Magistrate's recommendation in support of the ALJ's treatment of Dr. Barr's opinion is affirmed.

## IV. CONCLUSION

The Court finds that the decision of the Commissioner was supported by substantial evidence and should be affirmed. For the reasons stated above, the Court **ADOPTS** the Magistrate Judge's Report, and **DENIES** Plaintiff's Motion.

It is so ORDERED.

Entered this the \_\_\_\_15th\_\_\_\_ day of July, 2010.

*[signature]*
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT